## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JACOB IANNOTTI,
INDIVIDUALLY,
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

     *Plaintiff*,

    v.

GALAXY GAS, LLC, SBK
INTERNATIONAL, INC., SBK
INTERNATIONAL, LLC, and JOHN
DOES 1-20,
     *Defendants*.

CASE NO.:

**<u>JURY DEMAND</u>**

## <u>CLASS ACTION COMPLAINT</u>

1.    Galaxy Gas is a flavored nitrous oxide tank that users place in their mouths with nozzles and balloons to access the addictive nitrous oxide it contains. Similar to the popular drug Whippets, Galaxy Gas tanks are designed to create and sustain an addiction to nitrous oxide. Nitrous oxide is the fundamental reason why people use these products. Nitrous oxide is a highly addictive and dangerous drug.[1] Children and teenagers, especially ages 12-17, are particularly vulnerable to nitrous oxide addiction. Galaxy Gas is the most popular nitrous oxide product on the market

---

[1] ALLAN, CAMERON & BRUNO, A Systematic Review of Recreational Nitrous Oxide Use: Implications for Policy, Service Delivery and Individuals, NIH (2022).

and is directly sold to smoke shop owners, third-party retailers, and consumers by Galaxy Gas and tobacco and smoke shop wholesalers.

2.     Galaxy Gas is just a recent iteration of the smoke shop industry practice of designing a nitrous oxide delivery device that hooks children to nitrous oxide while making them think it is not dangerous or harmful. And so, Galaxy Gas looks like an enticing desert that is safe for consumption and comes in sweet flavors such as: "vanilla cupcake," "strawberry cream," "mango smoothie," "blue raspberry," "blueberry mango," "tropical punch," "watermelon lemonade," and others.

3.     Advertisements for Galaxy Gas emphasize the themes the industry has long known to resonate with youth and young adults, like "Galaxy," – a clear play on the notion that Galaxy Gas is going to take you somewhere high in the Galaxy – and further highlights the common sensation nitrous oxide creates, described by most of its users and medical journals as "floating" and "euphoric."[2]

4.     Defendants also benefit tremendously from social media influencers who promote Galaxy Gas from social media accounts run by smoke shops and private social media influencers. The Galaxy Gas trend on TikTok and YouTube receives significant internet traffic, striking millions of views.[3] Most influencers

---

[2]     Psychiatric Times, Galaxy Gas: The Dangerous Viral Trend, https://www.psychiatrictimes.com/view/galaxy-gas-the-dangerous-viral-trend.

[3] Live Now Fox, 'Galaxy Gas': Kids are Inhaling Dangerous Levels of Nitrous Oxide, https://www.livenowfox.com/news/kids-inhaling-galaxy-gas-nitrous-oxide-dangerous

describe the design of the logo and canister print as a product that belongs in a smoke shop. More specifically, with over a quarter million followers, YouTuber Andy King reviews the current hype of galaxy gas and describes it as: "from every single angle, this product is modeled, shaped, colored, texted, printed as if it belongs in a smoke shop."[4]

5.     Galaxy Gas is sold on Amazon.com and is verifiably described "from the brand" as a brand that uses "sonic cleaned canisters for the best nitrous on the market," which makes the product deceivingly seem safe and clean. *See, e.g.*, Amazon.com, https://www.amazon.com/Galaxy-Gas-Stainless-Dispenser-Canister/dp/B0C1RLRGJN?ref_=ast_sto_dp (last accessed Feb. 25, 2025).

6.     The tools used and sold by Galaxy Gas have an uncanny resemblance to smoking tools and devices, commonly sold in smoke shops and referred to as "bongs," as seen below:



---

[4] Andy King, Galaxy Gas: TikTok's most Dangerous Trend, YOUTUBE (Sep. 29, 2024), https://www.youtube.com/watch?v=wV52qw_XaXM

7.      Galaxy Gas has directly advertised on social media such as TikTok, Facebook, Instagram, and X as a whipped cream culinary tool and product, claiming that their products come in "eight amazing flavors for you to chef up."

8.      The identities of Defendants John Does 1-20 are unknown to Plaintiff at this time. John Does 1-20 are the retailers and distributors hired by Galaxy Gas to promote the sale of Galaxy Gas as a smoking device that may have personally made these representations, which concealed the potential harm of Galaxy Gas, and that may have caused or contributed to Plaintiff's damages. Plaintiff's Class Action Complaint may be amended to insert the names of these Defendants when they become known.

9.      Galaxy Gas trended on social media and was widely known amongst youth as a nitrous oxide inhalant drug. A simple Google search for "Galaxy Gas on TikTok" will show over nine million results, clearly reaching the pockets of youth and young adults nationwide.

10.     The Food and Drug Administration ("FDA") is an agency within the U.S. Department of Health and Human Services that is responsible for the safety and security of the nation's food supply and assures the safety and effectiveness of drugs and medical devices.[5]

---

[5] U.S. Food and Drug Administration, About FDA: Patient Q&A?, (Nov 2024),

11.     In addition to targeting youth and young adults through flavors, Defendants use deceptive advertising in describing Galaxy Gas as "FDA approved," which falsely implies that Galaxy Gas is not harmful, is safe for consumption, or that there is a reduced risk of addiction. "FDA approved" means that the Food and Drug Administration has reviewed the product's safety and effectiveness and determined that the product's benefits outweigh the risks of its intended use. But Galaxy Gas nitrous oxide is indeed intended for inhalation and recreational use.

12.     Like too many others, Plaintiff began using Galaxy Gas because they were enticed by the flavors and by Defendants' deceptive advertising. Plaintiffs' use of Galaxy Gas caused Plaintiff to suffer injuries that could have been avoided had the risks of Galaxy Gas been properly disclosed. Accordingly, Plaintiff bring this action to seek recovery for Defendants' its defective design, failure to warn, negligence, breaches of express and implied warranties, and fraudulent omissions and concealment of the risk of Galaxy Gas use.

## I.      JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 ("CAFA") because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in

---

https://www.fda.gov/media/151975/download#:~:text=What%20does%20%E2%80%9CFDA%20approved%E2%80%9D%20mean,the%20known%20and%20potential%20risks

controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the nationwide class of plaintiffs and one defendant are citizens of different States. For example, Plaintiff Jacob Iannotti is a South Carolina citizen, and, as described below, the named Defendants are citizens of the State of Georgia for purposes of determining citizenship under CAFA. *See* 28 U.S.C. § 1332(d)(10).

14.    This Court has specific personal jurisdiction over Defendants because Defendants conduct business in Georgia, have purposefully availed themselves of the benefits and protections of Georgia by: continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Georgia, and intentionally and purposefully placing Galaxy Gas products into the stream of commerce throughout Georgia and the United States with the expectation and intent that consumers would purchase them. Thousands of Galaxy Gas products have been sold in Georgia and are operated within the State and this judicial district.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, have their principal place of business in this district, and therefore are deemed to be citizens of this district. Additionally, there are one or more authorized Galaxy Gas dealers within this district, Galaxy Gas has advertised

in this district, and Galaxy Gas has received substantial revenue and profits from its sales and/or leasing of products in this district; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this district.

## II.    PARTIES

16.    Plaintiff Jacob Iannotti ("**Iannotti**") is a resident of the state of South Carolina and resides in South Carolina. Plaintiff was influenced by Galaxy Gas's marketing and advertising, which drove purchases. Plaintiff purchased Galaxy Gas and nitrous oxide products from the following locations, including but not limited to: (1) Smoke & Vapor Planet, 4425 John Marr Dr, Annandale, Virginia 22003, (2) Tobacco King, 6649 Arlington Boulevard, Falls Church, Virginia 22042, (3) A to Z Tobacco Shop, 3225 Pennsylvania Ave SE, Washington, DC 20020, (4) 540 Smoke & Vape Shop, 4950 Centre Pointe Drive Unit 118, North Charleston, South Carolina 29418, and (5) Moe Smoke, 1649 Savannah Hwy Unit B, Charleston, South Carolina 29407. Plaintiff did not know of Galaxy Gas's unreasonably dangerous characteristics when he began using Galaxy Gas, nor could he have learned of such characteristics through reasonable diligence. These characteristics were material to Plaintiff. By omitting the harmful nature of Galaxy Gas, Defendant's wrongful conduct in marketing, promoting, manufacturing, designing, packaging, and selling Galaxy Gas caused or contributed substantially to causing his injuries.

17.    Defendant Galaxy Gas, LLC manufactured, designed, sold, and operated the sale of nitrous oxide products and smoking tools. At all times material hereto, Defendant Galaxy Gas, LLC is a Georgia limited liability company with its principal place of business in the Northern District of Georgia. At all times, material hereto, Galaxy Gas, LLC, sold, produced, distributed, possessed, and/or maintained the sale of Galaxy Gas products within the State of Georgia and throughout the United States.

18.    At all times material hereto, Defendant SBK International, LLC, is a Georgia limited liability company with its principal place of business in the Northern District of Georgia. At all times material hereto, SBK International, LLC, designed, manufactured, marketed, advertised, promoted, distributed, sold, produced, distributed, possessed, and/or maintained the sale of Galaxy Gas products within the State of Georgia and throughout the United States.

19.    At all times material hereto, Defendant SBK International, Inc., is a Georgia Corporation with its principal place of business in the Northern District of Georgia. At all times, material hereto, SBK International, LLC, sold, produced, distributed, possessed, and/or maintained the sale of Galaxy Gas products within the State of Georgia and throughout the United States.

20.    Defendants design, manufacture, market, advertise, promote, distribute and/or sell Galaxy Gas in the United States.

### III.    FACTUAL ALLEGATIONS

21.    Nitrous oxide, commonly known as laughing gas, nangs, hippy crack, or nitrous oxide, is a colorless, odorless, non-flammable gas.

22.    Nitrous oxide is manufactured and sold for various purposes, including as a whipping propellant for food-grade aerosols, an oxidizer in motor racing fuels, and as an anesthetic and pain reliever in surgery and dentistry.

23.    Galaxy Gas is a nitrous oxide that comes in a hand-held canister:



24.    Galaxy Gas also comes in small canisters called "chargers" that are easily accessible and pocket size:



25.    Galaxy Gas is typically sold among smoking tools and devices in smoke shops, clearly portraying its intended use and purpose.

26.    The nitrous oxide in Galaxy Gas is inhaled with a nozzle or balloon attached to the dispenser:



Once inhaled, the nitrous oxide is quickly absorbed into the bloodstream through the lungs; then, it travels rapidly to the brain and the rest of the body.[7]

27.    Nozzles, commonly used to inhale the nitrous oxide in the Galaxy Gas canister, are included in the Galaxy Gas packaging. Ballons are complimentary when purchasing Galaxy Gas at smoke shops and gas stations.

28.    Once the user places Galaxy Gas nitrous oxide in their mouth, the

---

[6] https://nymag.com/intelligencer/article/galaxy-gas-flavored-nitrous-oxide-drug-epidemic.html
[7] ALLAN, CAMERON & BRUNO, supra note 1.

nitrous oxide is quickly absorbed into the bloodstream through the lungs; then it travels rapidly to the brain and the rest of the body.

29.    Nitrous oxide, when in liquid form, can cause severe and scarring burns or frostbite to the skin and any contact areas.

30.    Galaxy Gas is available in chargers or canisters of 8g, 375g, 580g, 615g, 700g, 1365g, and 2000g.

31.    The popularity of nitrous oxide consumption among young adults is explained by its easy availability, low price, and belief by users that it is a relatively safe and socially acceptable drug.

32.    Unlike medical-grade nitrous oxide, food-grade nitrous oxide is not combined with oxygen, resulting in higher concentrations of pure nitrous oxide. Inhalation of high concentrations of nitrous oxide deprives the body of oxygen. Depriving the brain of oxygen can cause nerve damage, unconsciousness, and even death.

33.    Inhaling nitrous oxide can result in a rapid rush of euphoric, dissociated, and out-of-body experiences. It causes the user to get very dizzy, light-headed, and giggly. The high is brief but very intense, and the sensation is often described as a sensation of "floating."

34.    Systematic use of nitrous oxide may lead to many long-term physical effects and disorders, including memory loss, vitamin B12 deficiencies, numbness

in the hands, feet, and other body parts, neuropathy, limb spasms, loss of muscle control in arms, legs, and other body parts, weakened immunity, periodontal disease, vascular injuries, and disruption to the reproductive system.

35.    Systematic use of nitrous oxide may lead to many long-term mental health disorders, including depression, addiction, anxiety, psychological dependency, and psychosis.

36.    An overdose of nitrous oxide may result in symptoms such as seizures, irregular heartbeat, chest pain, heart palpitations, loss of consciousness, shallow or slow breathing, and skin color changes in lips and fingernails. These symptoms are commonly experienced day to day among users.

37.    Defendants knew or should have known of the purposes and common use of Galaxy Gas as a nitrous oxide inhalant. The recreational use of nitrous oxide from Galaxy Gas has been widely advertised and published among influencers on social media and professional news outlets.

38.    At all times, material Galaxy Gas, LLC designed, manufactured, assembled, inspected, tested (or not), packaged, marketed, advertised, promoted, supplied, distributed, and/or sold Galaxy Gas nitrous oxide.

39.    Defendants fail to disclose these health risks. The "warning" saying "do not inhale" is entirely insufficient to communicate the true extent of the dangers and permanent physical and mental health risks posed by Galaxy Gas.

## IV.    CLASS ALLEGATIONS

40.    Plaintiff brings this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3), for the First, Second, Third, and Sixth Causes of Action herein.

> **Nationwide Class:**
>
> All persons or entities in the United States who purchased Galaxy Gas products.

41.    For the Fourth and Fifth Causes of Action (and in the alternative to the Nationwide Class for the remaining causes of action), and pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following individual state sub-classes:

> **District of Columbia Sub-Class**:
>
> All persons or entities who purchased Galaxy Gas products in the District of Columbia.
>
> **South Carolina Sub-Class:**
>
> All persons or entities who purchased Galaxy Gas products in the State of South Carolina.
>
> **Virginia Sub-Class**:
>
> All persons or entities who purchased Galaxy Gas products in the State of Virginia.

(Collectively, the "State Classes").

13

42.     Together, unless otherwise noted, the Nationwide Class, and the State Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Defendants, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation and any addition of parties.

43.     **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the Defendants' sole possession and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis allege, that millions of Galaxy Gas products have been sold and leased in states that are the subject of the Class.

44.     **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, whether:

   a)     the Galaxy Gas products were sold with addictive and harmful properties, and any and all related consequences of consumption;

   b)     the addictive and harmful properties of Galaxy Gas is common to all or some of the Galaxy Gas products;

c)    Defendants knowingly failed to disclose the existence of addictive nature of Galaxy Gas products and its harmful consequences;

d)    Defendants conduct violates the consumer protection statutes and the other statutes asserted herein;

e)    a reasonable consumer would consider the addictive nature of Galaxy Gas products and its consequences to be material;

f)    Defendants should be required to disclose the addictive nature of Galaxy Gas products and its consequences;

g)    Defendants' conduct violates the statutory and common-law provisions set forth in this Complaint;

h)    as a result of Defendants' material omissions as to the true risks related to the Galaxy Gas products, Plaintiff and members of the Class have suffered ascertainable loss of monies and/or property and/or value; and

i)    Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

45.    **Typicality:** All of Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased the Galaxy Gas products with the same addictive and harmful properties as other Class members. Furthermore, Plaintiff and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiff advances the same claims and legal theories on behalf of themselves and all absent Class members.

46.    **Adequacy:** Plaintiff adequately represents the Class because his interests do not conflict with the interests of the Class they seek to represent, he has retained counsel who are competent and highly experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel are well-suited to fairly and adequately protect the interests of the Class.

47.    **Superiority:** A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Class members on an individual basis to effectively redress the wrongs done to them. Even if Class members could afford such individual litigation, the courts cannot. Individualized litigation presents potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class members can be readily identified and notified based on, *inter alia*, Defendants' sales records and database of complaints.

16

48.    Defendants have acted, and/or refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## TOLLING OF THE STATUTES OF LIMITATION

49.    **Discovery Rule**. Plaintiff and the Class members' claims cannot accrue until discovery of the dangerous consequences of the use of Galaxy Gas products. While Defendants knew and concealed the potential consequences of such use, Plaintiff and the Class members could not and did not discover these dangers through reasonable diligence.

50.    **Active Concealment Tolling**. Any statutes of limitations are told by Defendants knowing and active concealment from Plaintiff and the Class Members of the defects and risks associated with the Galaxy Gas products. Defendants kept Plaintiff and the Class members ignorant of information showing that Galaxy Gas products caused their injuries and/or sequelae thereto. Through their ongoing affirmative misrepresentations and omissions (the full extent of which are known only to Defendants), Defendants committed continual tortious and fraudulent acts. Plaintiff and the Class members did not suspect and had no reason to suspect Galaxy Gas caused their injuries and/or sequelae thereto prior to the filing of this action.

51.    **Estoppel**. Defendants were and are under a continuous duty to disclose the true character of the Galaxy Gas

products. At all relevant times, Defendants knowingly, affirmatively, and actively concealed the true character, quality, nature, and risk of the Galaxy Gas products. Plaintiff and the Class members reasonably relied upon Defendants' silence as to the defect, which Defendants intended. Accordingly, Defendants should be estopped from relying upon on any statutes of limitations defense in this action.

52.    **Equitable Estoppel**. Defendants took active steps to conceal that the Galaxy Gas products were dangerous and defective. The details of Defendants' efforts to conceal its unlawful conduct are in its exclusive possession, custody, and control. When Plaintiff learned about material information, he exercised due diligence by investigating the situation, retaining counsel, and pursuing his claims. Accordingly, all applicably statutes of limitations are tolled under the doctrine of equitable tolling.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### DESIGN DEFECT
**(Plaintiff, individually, and on behalf of the Nationwide Class, and in the Alternative, the State Classes)**

53.    Plaintiff and the Class incorporate by reference paragraphs 1-52 as though fully set forth at length herein.

54.    Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Galaxy Gas that Plaintiff consumed.

18

55.    Galaxy Gas was designed and intended to be used as a method of ingesting nitrous oxide and the other constituents in the Galaxy Gas canister or charger.

56.    At the time of Plaintiff's injuries, the subject nitrous oxide chargers were in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use in that:

      a.    The subject nitrous oxide canisters were sold for recreational use;

      b.    The subject nitrous oxide canisters were designed to promote recreational use;

      c.    The subject nitrous oxide canisters were of inappropriate size;

      d.    The subject nitrous oxide canisters were provided to consumers in unreasonable quantities;

      e.    The subject nitrous oxide canisters are addictive;

      f.    The subject nitrous oxide canisters failed to contain adequate guarding which allows for repetitive recreational use;

      g.    The subject nitrous oxide canisters failed to incorporate abuse-deterrent designs;

      h.    The subject nitrous oxide canisters failed to contain an adequate warning; and

      i.    Such further defects as discovery and the evidence shall reveal.

57.    Galaxy Gas was sold in a defective condition that is unreasonably dangerous and unsafe, and posed a substantial likelihood of harm to Plaintiff because of reasons including the high delivery of nitrous oxide, the likelihood of nitrous

oxide addiction and the risks of behavioral, cognitive, mental health, neurological, and pulmonary injuries, including cyanosis secondary to hypoxia, long term vitamin B12 (cobalamin) deficiency, subacute combined degeneration, and among other harmful effects.

58.    Galaxy Gas was sold in a defective condition that is unreasonably dangerous and unsafe to Plaintiff because Defendants failed to adequately warn about the risk of nitrous oxide addiction and failed to warn of the risks of behavioral, cognitive, mental health, neurological, and pulmonary injuries, including cyanosis secondary to hypoxia, long term vitamin B12 (cobalamin) deficiency, subacute combined degeneration, and among other harmful effects.

59.    Defendants are strictly liable for the sale of defective Galaxy Gas products that contained inadequate warnings. Alternatively, all Defendants are liable for the negligent design of Galaxy Gas products.  Despite knowing of the risks of the recreational use of Galaxy Gas, Defendants designed and promoted Galaxy Gas to specifically appeal to minors and young adults, who were particularly unable to appreciate the risks posed by Galaxy Gas.

60.    Defendants knowingly designed Galaxy Gas with a pharmacokinetic profile engineered to create risks of abuse and addiction.

61.    Defendants knowingly and defectively designed Galaxy Gas that is inherently dangerous because it included features making the product attractive and

more palatable to youth. These features include its concealability and it's "FDA Approval" conditions, creating the false and misleading impression that it is safe for consumption.

62.    Galaxy Gas does not perform as safely as a reasonable and ordinary consumer would reasonably assume and reasonably expect, as Galaxy Gas is designed to cause and sustain nitrous oxide addiction, delivers a potent amount of nitrous oxide, and is likely to cause behavioral, cognitive, mental health, neurological, and pulmonary injuries, including cyanosis secondary to hypoxia, long term vitamin B12 (cobalamin) deficiency, subacute combined degeneration, and among other harmful effects.

63.    The risks inherent in the design of Galaxy Gas significantly outweigh any benefits of such design.

64.    Defendants could have utilized cost-effective, reasonably feasible alternative designs to minimize these harms, such as by designing products that delivered less nitrous oxide, preventing the sale of Galaxy Gas in smoke shops, and/or did not have flavors that attract youth and young adults like Plaintiff.

65.    Plaintiff used Galaxy Gas as intended or in reasonably foreseeable ways.

66.    Plaintiff's injuries, physical, emotional, and economic, were reasonably foreseeable at the time of Galaxy Gas's design, manufacture, distribution, and sale.

67.     Galaxy Gas was defective and unreasonably dangerous when they left Defendants' possession. The defects continued to exist through the products' sale to and use by consumers, including Plaintiff, who used the products without any substantial change in the products' condition.

68.     Plaintiff was injured as a direct and proximate result of Galaxy Gas's defective design as described herein. The defective design of Galaxy Gas was a substantial factor in causing Plaintiff's harms.

69.     Plaintiff demands judgment against Defendants for all available damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Additionally, as Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care, Plaintiff is entitled to an award of punitive damages.

## <u>SECOND CAUSE OF ACTION</u>:
### FAILURE TO WARN
**(Plaintiff, individually, and on behalf of the Nationwide Class, and in the Alternative, the State Classes)**

70.     Plaintiff and the Class incorporate by reference paragraphs 1-52 as though fully set forth at length herein.

71.     Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Galaxy Gas that Plaintiff consumed.

72.    Galaxy Gas was sold in a defective condition that is unreasonably dangerous and unsafe to Plaintiff because Defendants failed to adequately warn about the risk of nitrous oxide addiction and failed to warn of the risks of behavioral, cognitive, mental health, neurological, and pulmonary injuries, including cyanosis secondary to hypoxia, long term vitamin B12 (cobalamin) deficiency, subacute combined degeneration, among other harmful effects.

73.    Defendant had a duty to warn of the risks Galaxy Gas posed, of which Galaxy Gas had or should have had knowledge.  Such risks were known and knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, distribution, and sale of Galaxy Gas.

74.    Galaxy Gas is defective because, among other reasons described herein, Defendants failed to warn consumers, including Plaintiff, in Galaxy Gas's labeling, packaging, and through the marketing promotion, and advertising of Galaxy Gas including that:

    a.    Galaxy Gas causes, maintains, or aggravates nitrous oxide addiction and subject consumers to the risks of concomitant health hazards that addictive, i.e., compulsive behavior can result in, and that this danger was even greater for minors;

    b.    Galaxy Gas causes harm by increased exposure to nitrous oxide and other harmful ingredients;

    c.    Galaxy Gas is a nitrous oxide delivery device not intended for youth or young adults;

d.   Galaxy Gas delivers nitrous oxide at greater levels than medically;

e.   Galaxy Gas carries risks of behavioral, cognitive, mental health, neurological, and pulmonary injuries, including cyanosis secondary to hypoxia, long term vitamin B12 (cobalamin) deficiency, subacute combined degeneration, and among other harmful effects;

f.   Which and when medical symptoms warranted medical care; and

g.   How much Galaxy Gas nitrous oxide is safe to consume in a day.

75.   The failure to adequately warn about its defective products and to misleadingly advertise through conventional and social media avenues created a danger of injuries described herein that were reasonably foreseeable at the time of labeling, design, manufacture, distribution, and sale of Galaxy Gas.

76.   Ordinary consumers would not have recognized the potential risks of Galaxy Gas when used in a manner reasonably foreseeable to Defendants.

77.   Defendants are strictly liable for the sale of defective Galaxy Gas products that contained inadequate warnings. Alternatively, Defendants are liable for their negligent failure to warn. As described above, Defendants knew or should have known the risks inherent in the use of Galaxy Gas, for which they failed to warn Plaintiff and the Class members.

78.   Plaintiff could not have averted injury through exercise of reasonable care for reasons including Defendants' concealment of the true risks posed by Galaxy Gas.

79.    Galaxy Gas was defective and unreasonably dangerous when they left Defendants' possession because it lacked adequate warnings. The defects continued to exist through the products' sale to and use by consumers, including Plaintiff, who used the products without any substantial change in the products' condition.

80.    Defendants could have provided adequate warnings and instructions to prevent the harms and injuries set forth herein.

81.    Plaintiff was injured as a direct and proximate result of Defendants' failure to warn because Plaintiff would not have used or purchased Galaxy Gas had Plaintiff received adequate warnings and instructions.

82.    Defendants' lack of adequate and sufficient warnings and instructions and its inadequate and misleading advertising was a substantial contributing factor in causing the harm to Plaintiff.

83.    Plaintiff demands judgment against Defendants for all available damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Additionally, as Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care, Plaintiff is entitled to an award of punitive damages .

**THIRD CAUSE OF ACTION:**
**NEGLIGENCE**
**(Plaintiff, individually, and on behalf of the Nationwide Class, and in the Alternative, the State Classes)**

84.    Plaintiff and the Class incorporate by reference paragraphs 1-52 as though fully set forth at length herein.

85.    Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Galaxy Gas that Plaintiff consumed.

86.    Galaxy Gas was the type of product that could endanger others if negligently made, promoted, and sold.

87.    Defendants had a duty of reasonable care in designing, manufacturing, assembling, inspecting, testing, packaging, labeling, marketing, advertising, promoting, supplying, distributing, and/or selling Galaxy Gas to avoid causing harm to those that consumed Galaxy Gas.

88.    Defendants knew or should have known through the exercise of reasonable care that the risks of consumers of Galaxy, a powerfully addictive and dangerous nitrous oxide delivery device.

89.    Defendants knew or should have known through the exercise of reasonable care that minors and young adults would be attracted to Galaxy Gas.

90.    Defendants knew or should have known through the exercise of reasonable care that Galaxy Gas was dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner, particularly with minors and young adults.

26

91.    Defendants knew or should have known through the exercise of reasonable care that Galaxy Gas was designed to cause or sustain nitrous oxide addiction, and that Galaxy Gas posed a risk of harm including risks of addiction, behavioral, cognitive, mental health, neurological, and pulmonary injuries, including cyanosis secondary to hypoxia, long term vitamin B12 (cobalamin) deficiency, subacute combined degeneration, and among other harmful effects.  As described herein, these harms were known and knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, distribution, promotion, and sale of Galaxy Gas.

92.    Defendants knew or should have known through the exercise of reasonable care that Galaxy Gas needed to be researched, designed, manufactured, assembled, inspected, tested packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold properly, without defects and with due care to avoid needlessly causing harm.

93.    Defendants knew or should have known through the exercise of reasonable care that Galaxy Gas could cause serious risk of harm, particularly to young adults and minors.

94.    Defendants were negligent, reckless, and careless and failed to take the care and duty owed to Plaintiff, thereby causing Plaintiff to suffer harm.

95.    Defendants breached their duty of care by, among other things:

a.    Failing to perform adequate testing of Galay Gas prior to marketing to ensure safety, including long-term testing of the product, and testing for injury to the brain and pulmonary systems, respiratory, gastrointestinal, and periodontal, and other related medical conditions, as well as its effect on mental health;

b.    Failing to inform or warn consumers, including Plaintiff, that Galaxy Gas had not been adequately tested or researched prior to marketing to ensure safety;

c.    Failure to take reasonable care in the design of Galaxy Gas;

d.    Failure to take reasonable care in the advertising, promoting, and marketing of Galaxy Gas;

e.    Failure to warn consumers, including Plaintiff, of the dangers associated with Galaxy Gas, including that it was unsafe, is powerfully addictive, can cause permanent changes in the brain, mood disorders, and impairment of thinking and cognition;

f.    Failure to use reasonable care in the sale of Galaxy Gas without adequate warnings; use of flavors and design to appeal to minors and young adults;

g.    Claiming Galaxy Gas is FDA approved, misleadingly implying Galaxy Gas is safe for consumption.

h.    Failure to provide any instructions regarding a safe amount of Galaxy Gas to consume in a day;

i.    All other failures, acts and omissions set forth herein.

96.    Defendants further acted and or failed to act willfully and with conscious and reckless disregard for the rights, interests, and safety of Plaintiff, and Defendants acts and omissions had a great probability of causing significant harm; and in fact resulted in such harm.

97.    Defendants reasonably should have foreseen that young people would try Galaxy Gas and quickly become addicted, resulting in teenagers and young adults developing lifelong addictions.

98.    Plaintiff was injured as a direct and proximate result of negligence and/or gross negligence as described herein.

99.    Defendants' negligence was a substantial factor in causing and or contributing to Plaintiff's injuries and harms.

100.    Plaintiff demands judgment against Defendants for all available damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Additionally, as Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care, Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION:
## BREACH OF IMPLIED WARRANTY
### (Plaintiff, individually, and on behalf of the State Classes)

101.    Plaintiff and the Class incorporate by reference paragraphs 1-52 as though fully set forth at length herein.

102.    Defendants    designed,    manufactured,    distributed,    packaged, compounded, merchandised, advertised, promoted, supplied and sold Galaxy Gas, before Galaxy Gas was purchased and used, Defendants impliedly warranted to

Plaintiff and the FDA that Galaxy Gas were of merchantable quality and safe for the use for which they were intended.

103.  Plaintiff relied on the skill, judgment, and representations of Defendants in purchasing and using Galaxy Gas.

104.  Galaxy Gas was unsafe for their intended use and was not of merchantable quality as warranted by Defendants in that they had dangerous propensities when put to their intended use, thereby rendering the products sold worthless.

105.  Plaintiff and the Class members were damaged by these breaches of warranty, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION:**
**BREACH OF EXPRESS WARRANTY**
**(Plaintiff, individually, and on behalf of State Classes)**

106.  Plaintiff and the Class incorporate by reference paragraphs 1-52 as though fully set forth at length herein.

107.  Defendants designed, manufactured, distributed, packaged, compounded, merchandised, advertised, promoted, supplied and sold Galaxy Gas and, before Galaxy Gas was purchased and used, Defendants expressly warranted to Plaintiff that Galaxy Gas was of merchantable quality and safe for the use for which they were intended.

108. At the time of making said express warranties, Defendants had knowledge of the purpose for which Galaxy Gas was to be used and warranted them to be, in all respects, fit, safe, and effective and proper for such purposes.

109. Plaintiff relied on the skill, judgment and express warranties and representations of Defendants in having the purchasing and using Galaxy Gas.

110. These warranties were false and untrue at the time they were made. Defendants knew Galaxy Gas was unsafe and unsuited for the use for which they were intended, and that they could cause attendant medical problems as described herein. Further, Galaxy Gas unsafe for their intended use and were not of merchantable quality as warranted by the Defendants in that they had dangerous propensities when put to their intended use.

111. The Galaxy Gas and nitrous oxide designed, manufactured, distributed, packaged, compounded, merchandised, advertised, promoted, supplied and/or sold by Defendants, proximately and directly exposed Plaintiff to the harmful health consequences and medical conditions, as set forth herein, thereby rendering the products sold worthless.

112. Plaintiff and the Class members were damaged by these breaches of warranty, in an amount to be proven at trial.

**<u>SIXTH CAUSE OF ACTION</u>:**
**FRAUDULENT CONCEALMENT**
**(Plaintiff, individually, and on behalf of the Nationwide Class, and in the Alternative, the State Classes)**

113.   Plaintiff and the Class incorporate by reference paragraphs 1-52 as though fully set forth at length herein.

114.   Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Galaxy Gas that Plaintiff consumed.

115.   Defendants created and implemented a plan to generate a market for Galaxy Gas and substantially increase sales of Galaxy Gas through a pervasive pattern of false and misleading statements and omissions. Although Defendants knew of the risks associated with using Galaxy Gas, Defendants intended to and did portray Galaxy Gas as cool and safe, with a particular emphasis on appealing to minors, based in part on flavors, while omitting key facts concerns Galaxy Gas addictiveness and safety.

116.   Defendants' marketing, promoting, and advertising deceptively omitted and concealed the harmful effects of Galaxy Gas.

117.   Defendants further fraudulently and deceptively marketed Galaxy Gas as safe, healthful, or not harmful when Defendants knew it to be untrue.

118.   Defendants further fraudulently and deceptively downplayed, minimized, and concealed the risks associated with Galaxy Gas generally. Defendants concealed that Galaxy Gas can cause addiction, behavioral, cognitive, mental health, neurological, vascular, and pulmonary injuries, including cyanosis

secondary to hypoxia, long term vitamin B12 (cobalamin) deficiency, subacute combined degeneration, periodontal disease, and among other harmful effects. Defendants further fraudulently and deceptively concealed that Galaxy Gas was powerfully addictive and that its design inherently demanded dependency.

119.   Defendants' marketing, promoting, and advertising failed to disclose that it was an extremely potent nitrous oxide delivery device; Galaxy Gas was designed to create and sustain nitrous oxide addiction; and posed significant risks of substantial injury resulting from use of Galaxy Gas.

120.   Defendants' conduct was fraudulent because their deceptive omissions had the capacity to, were likely to, and in fact did, deceive reasonable consumers including Plaintiff.

121.   Defendants owed Plaintiff a duty to disclose these facts because they were known and/or accessible exclusively to Defendants, who have had exclusive and superior knowledge of the facts; because the facts would be material to reasonable consumers, who could not discover the defect through reasonable diligence; and because Galaxy Gas poses an unreasonable risk of substantial bodily injury.

122.   Before making his purchases of Galaxy Gas, Plaintiff had viewed Galaxy Gas advertising ads, which state or imply that Galaxy Gas is otherwise not harmful, and which omit the dangerous consequences of using Galaxy Gas. Plaintiff

also reviewed the Galaxy Gas packaging which did not disclose the dangerous consequences of using Galaxy Gas.

123.   Plaintiff reasonably and justifiably relied on Defendants' deceptive omissions. Had Defendants sufficiently disclosed the risks of Galaxy Gas, Plaintiff would not have purchased the Galaxy Gas products in the first place. Reasonable consumers also would avoided purchasing Galaxy Gas products had Defendants sufficiently disclosed the risks.

124.   Defendants knew or should have known that the omissions in their marketing, advertising, and packaging were false and misleading, and intended for consumers, including Plaintiff, to rely on such omissions.

125.   Defendants' concealment and omissions were a substantial factor in causing Plaintiff's harms. Plaintiff was injured as a direct and proximate result of Defendants' fraudulent conduct as described herein.

126.   Through the exercise of reasonable diligence, Plaintiff did not and could not have discovered that Galaxy Gas caused Plaintiff's injuries and/or sequelae thereto because, at the time of these injuries and/or sequelae thereto, the cause was unknown to Plaintiff.

127.   As a result of Defendants' fraudulent concealment, Plaintiff was unaware and could not have reasonably known or learned through reasonable diligence that Plaintiff had been exposed to the defects and risks alleged herein and

34

that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

128.    Plaintiff demands judgment against Defendants for all available damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Additionally, as Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care, Plaintiff is entitled to an award of punitive damages.

<u>SEVENTH CAUSE OF ACTION</u>:
**RECOVERY OF EXPENSES OF LITIGATION**
**(Plaintiff, individually, and on behalf of the Nationwide Class, and in the Alternative, the State Classes)**

129.    Plaintiff and the Class incorporate by reference paragraphs 1-52 as though fully set forth at length herein.

130.    As evidenced by the conduct alleged herein, Defendants have acted in bad faith and caused Plaintiff and the Class unnecessary trouble and expense, for which they seek the recovery of expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## VI.    JURY DEMAND

131.    Plaintiff, on behalf of himself and the putative Class, hereby demands a trial by jury on all issues so triable.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, respectfully requests that this Court:

a.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

b.    appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

c.    award all available damages, including punitive damages, and restitution to which Plaintiff and members of the Class are entitled;

d.    award pre-judgment and post-judgment interest on any monetary relief;

e.    grant appropriate injunctive and/or declaratory relief;

f.    award reasonable attorneys' fees and costs; and

g.    grant such further relief that this Court deems appropriate.

Dated: February 27, 2025.                Respectfully submitted,

**BARNES LAW GROUP, LLC**

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
E-Mail: ctribble@barneslawgroup.com

*Local Counsel for Plaintiff and the Proposed Class*

Bruce W. Steckler*
Austin P. Smith*
Jack M. Kelley*
Paul D. Stickney*
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
bruce@stecklerlaw.com
austin@stecklerlaw.com
jkelley@stecklerlaw.com

James M. Goff*
Texas Bar No. 24095427
**GOFF LAW, PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
P:  972-928-0085
jim@gofflawdfw.com